IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ROY CHAMNISS,
          Petitioner,

vs.                                                    Case No.:  3:11cv566/RV/EMT

KEN TUCKER,
          Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum filed pursuant to 28 U.S.C. § 2254 (docs. 1, 2).  Respondent filed an answer and relevant portions of the state court record (docs. 22, 24).  The court afforded Petitioner an opportunity to file a reply (*see* doc. 23), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 24).[1]  Petitioner was charged in the Circuit Court in and for Okaloosa County,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (doc. 24).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2008-CF-1720, with one count of lewd and lascivious conduct, a second degree felony (Ex. A). The State subsequently amended the information to charge lewd or lascivious molestation, also a second degree felony (Ex. B). On February 19, 2009, Petitioner entered a written Plea and Sentencing Agreement, pursuant to which he agreed to plead guilty as charged in the original information with no agreement as to his sentence (Ex. G). The trial court accepted the plea and adjudicated Petitioner guilty (Ex. H). On April 13, 2009, he was sentenced to fifteen (15) years of imprisonment, with pre-sentence jail credit of 85 days (Exs. I, J). He was also designated a sexual predator (Exs. J, K).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-1840. Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. L). Petitioner filed a pro se initial brief (Ex. M). The First DCA affirmed the judgment per curiam without written opinion on April 29, 2010 (Ex. N). Chamniss v. State, 34 So. 3d 4 (Fla. 1st DCA 2010) (Table). Petitioner did not seek further review.

On December 10, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O at 1–25). The state circuit court summarily denied the motion (id. at 92–97, 149–50). Petitioner appealed the decision to the First DCA, Case No. 1D11-2167 (Ex. P). The First DCA affirmed the judgment per curiam without written opinion on July 26, 2011, with the mandate issuing October 18, 2011 (Ex. Q, T). Chamniss v. State, 70 So. 3d 589 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on November 21, 2011 (doc. 1). Respondent concedes the petition is timely (doc. 22 at 7).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.
In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.     PETITIONER'S CLAIMS

Ground One: "Whether the trial court erred by failing to make a factual basis determination on the record thereby causing the plea to be involuntary, against rights secured by the United State Constitution."

Ground Two: "Whether trial counsel Scott Miller rendered ineffective assistance of counsel by failing to object to trial court erroneously failing to make a factual basis determination on the record, thereby causing the plea to be involuntary, against rights secured by the United States Constitution."

Ground Three: "Whether trial counsel Public Defender Scott Miller rendered ineffective assistance of counsel by failing to advise appellant of all the elements of his charged offense thereby causing the plea to be involuntary against rights secured by the United States Constitution."[3]

In Ground One, Petitioner contends the trial court failed to follow Rule 3.172(a) of the Florida Rules of Criminal Procedure, which required the court to determine that a factual basis for the guilty plea existed and to state on the record the source for establishing the existence of a factual basis (doc. 1 at 4; doc. 2 at 5–8). He contends there was no factual basis for the plea to lewd and lascivious conduct, and as a result of the court's failure to inquire into the factual basis on the record, he pleaded guilty to an offense of which he was not guilty (*id.*).

In Ground Two, Petitioner contends defense counsel failed to object to the court's acceptance of the guilty plea without establishing a factual basis for the offense on the record (doc. 1 at 4; doc. 2 at 9–13). He contends counsel thus allowed him to plead to the wrong offense, because he agreed to plead to the charge in the original information (lewd and lascivious conduct), but was adjudicated guilty of and sentenced to the charge in the amended information (lewd and lascivious molestation) (*id.*). Petitioner contends counsel's failure to object rendered his plea involuntary (*id.*).

In Ground Three, Petitioner contends defense counsel never advised him of the elements of the offense to which he pleaded guilty (doc. 1 at 4; doc. 2 at 14–16). He specifically argues counsel failed to advise him of the intent element of the crime, and counsel failed to advise him that a guilty plea constituted an admission that all of the elements of the offense were satisfied (*id.*). He contends counsel's error rendered his plea unintelligent and unknowing, and he never would have pleaded guilty if counsel had advised him of the intent element (*id.*).

Respondent contends Ground One fails to state a valid claim for federal habeas relief, because Petitioner alleged only a violation of a state procedural rule, not a provision of the federal Constitution (doc. 22 at 15). Respondent additionally contends the state postconviction court

[3] The court consolidated some of Petitioner's claims for organizational purposes.

correctly determined, by reference to the state court record, that a factual basis for the plea existed (*id.* at 16).  Respondent contends Petitioner thus failed to show he was prejudiced by counsel's failure to object to the trial court's failure to establish a factual basis on the record at the plea hearing (*id.*).  Respondent additionally contends Petitioner acknowledged in the written plea agreement that he understood the charge set forth in the charging document, which is the charge to which he pleaded (*id.*).  Therefore, Petitioner failed to establish the state court's adjudication of these claims was contrary to or an unreasonable application of clearly established federal law (*id.* at 15–19).

      1.     Clearly Established Federal Law

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant.  *See* North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)).  A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available.  *See* Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2258, 49 L. Ed. 2d 108 (1976); Stano v. Dugger, 921 F.2d 1125, 1142 (11th Cir. 1991) (citations omitted).  "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense."  Morgan, 462 U.S. at 645 n.13 (citation omitted); Boykin, 395 U.S. at 243 & n.5.  "A defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements."  Gaddy v. Linahan, 780 F.2d 935, 943 (11th Cir. 1986) (quoting Morgan, 426 U.S. at 645–47).  The extent to which the elements must be explained varies with the circumstances, but at the very least, due process requires that the defendant receive a description of the "critical elements" of the charged offense, such as the element defining the requisite intent.  Gaddy, 780 F.2d at 944–45 (citing Morgan, 426 U.S. at 644, 647 n.18).  Additionally, the accused should understand how his conduct satisfies the elements of

the charge, and this entails that the accused have sufficient background information about the facts of his case to make an informed decision about the case against him. *Id.*

"Due process does not require that the defendant, in pleading guilty, be informed of each element of the crime *at the plea hearing*." Gaddy, 780 F.2d at 944 (emphasis in original) (citations omitted). "The defendant may receive detailed information about the elements of the offense beforehand. Most commonly, his attorney provides such information. Thus, for a plea to be knowing and voluntary, the defendant must be informed of the elements of the offense either at the plea hearing or on some prior occasion, and he must understand them." *Id.*; Stano, 921 F.2d at 1142 (citations omitted).

Due process also requires that a defendant's factual guilt of the crime charged be established. In a guilty plea situation, this requirement may be satisfied by a defendant's own solemn admission in open court that he is in fact guilty of the offense with which he is charged. Tollett v. Henderson, 411 U.S. 258, 267, 92 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973). However, an express admission of guilt, is not a constitutional requisite to the imposition of criminal penalty. Alford, 400 U.S. at 37. "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* When a defendant "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt," a plea may be accepted. *Id.* The purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction, rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily, because it demonstrates a defendant's recognition that the evidence negates his claim of innocence and that he has nothing to gain by a trial and much to gain by entering a plea. *See* McCarthy v. United States, 394 U.S. 459, 467, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (citing Alford, 400 U.S. at 37–38, 38 n.10; Willett v. Georgia, 608 F.2d 538, 540 (5th Cir. 1979)).

"Alford is based on the fact that the defendant could intelligently have concluded that, whether he believed himself to be innocent and whether he could bring himself to admit guilt or not, the State's case against him was so strong that he would have been convicted anyway." Morgan,

426 U.S. at 648 n.1 (White, J., with whom Stewart, J., Blackmun, J. and Powell, J. joined, concurring).  "[A] defendant cannot intelligently reach that conclusion, if he does not know the elements of the crime to which he is pleading and therefore does not know what the State has to prove; and his ignorant decision to plead guilty under such circumstances is not a reliable indication that he is in fact guilty."  *Id.*

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  *See* Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  To obtain relief under Strickland, Petitioner must establish: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688.

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  466 U.S. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of  unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the  facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See* Strickland, 466 U.S. at 690. Indeed, Petitioner must demonstrate that counsel committed "serious derelictions" of his duty. Stano, 921 F.2d at 1150–51. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. Stano, 921 F.2d at 1152 (citations omitted).

The second prong of the Strickland analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance. To satisfy this element, Petitioner must come forth with objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under Strickland. *See* Diaz, 930 F.2d at 835; *see also* Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

      2.        Federal Review of State Court Decision

Petitioner raised Grounds One, Two, and Three in his Rule 3.850 motion (Ex. O at 6–11, 69–75). The state circuit court—after discussing and identifying the two-prong <u>Strickland</u> standard (*id.* at 92–93)—adjudicated the claims as follows:

> First Defendant argues that the trial court erred in accepting his guilty plea without first establishing a factual basis for the plea on the record.
>
> Although it does appear that no factual basis was mentioned during the plea colloquy, the Defendant has *not* alleged that a factual basis for the plea did not exist, merely that it was not established on the record.
>
> As the attached arrest report demonstrates, and as referenced by the written plea agreement, a factual basis for the plea *did* exist.[FN 9] Because such a factual basis did exist in support of the entry of the plea, the Defendant was not prejudiced by any failure on the part of counsel or the court to ascertain such basis on the record during the plea colloquy. This ground is summarily **DENIED**.
> . . . .
> Second, Defendant argues that his trial court performed ineffectively by failing to object to the Court's acceptance of his guilty plea without first establishing a factual basis. As described above, this ground is meritless and summarily **DENIED**.
> . . . .
> Third, Defendant argues that his trial counsel performed ineffectively by failing to advise him of the elements of the offenses for which he was charged. As the attached transcript from the plea colloquy in this matter shows,[FN 10] the Defendant was informed of the possible maximum sentence; the Court ensured that no one had used threats or pressure to make him plea[d]; that he signed the written plea agreement; and that he understood what he was signing, and understood all of the rights, responsibilities and privileges that he was waiving by pleading. Accordingly, Defendant's plea was freely, intelligently, and voluntarily entered.[FN 11] This ground is summarily **DENIED**.
>
> [FN 9: Exhibit C – Arrest Report]
>
> [FN 10: Exhibit D – Transcript from Plea Colloquy]
>
> [FN 11: <u>See</u> <u>Carpenter v. State</u>, 740 So. 2d 556 (Fla. 1st DCA 1999) (Appellant alleged in a motion for post-conviction relief that he was not properly informed of the elements of the offenses for which he entered plea. Court wrote: "The trial court correctly addressed the first ground by attaching to his order those parts of the record that conclusively show that Appellant is not entitled to the relief

> requested. The transcript of the plea colloquy attached to the trial
> court's order denying Appellant's motion for post-conviction relief
> reveals that Appellant was told that all three counts of armed robbery
> carried a maximum sentence of life imprisonment; that no one had
> used threats or pressure to make Appellant plea; that he signed the
> written plea agreement; and that he understood what he was signing,
> and understood all of the rights, responsibilities and privileges that he
> was waiving by pleading. Accordingly, we find that Appellant's plea
> was freely, intelligently, and voluntarily entered, and the trial court
> is affirmed on this ground.")

(*id.* at 93–95). Petitioner appealed the state circuit court's decision to the First DCA. The appellate court affirmed per curiam without written opinion.

Initially, the state court correctly cited the two-prong <u>Strickland</u> standard as the applicable legal standard (*id.* at 92–93). Therefore, Petitioner is not entitled to federal habeas relief unless he demonstrates the state court unreasonably applied <u>Strickland</u> in adjudicating his claims.

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* <u>Gill</u>, 633 F.3d at 1287 (citing <u>Harrington</u>, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Petitioner argues his plea was unknowing and unintelligent, because (1) there was no factual basis for the plea, (2) the trial court failed to establish a factual basis for the plea on the record at the plea hearing, (3) defense counsel failed to object to this alleged error, and (4) defense counsel failed to advise him of the elements of the offense to which he pled.

The record supports the state court's findings that Petitioner signed the written plea agreement and understood what he was signing. The written plea agreement bearing Petitioner's

signature is included in the record (Ex. G). The plea agreement provides that by signing the agreement, Petitioner acknowledged he read and understood its contents (*id.*). It further provides Petitioner agreed to plead guilty to lewd and lascivious conduct, and Petitioner certified he read the charging document and understood the charge set forth therein (*id.* at 1). Petitioner also certified he reviewed the facts of his case with counsel, and he (Petitioner) agreed that there were sufficient facts available to the State to justify his plea of guilty to the charge (*id.*). The plea agreement additionally provided:

> 7.    FACTUAL BASIS FOR PLEA: The arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for the plea.

(*id.* at 4). The arrest report and probable cause affidavit are included in the record (Ex. O at 109–11). The probable cause affidavit states the following:

> On the 16th of July 2008 R.E. provided a sworn Affidavit of Complaint that she was advised by her fourteen year old daughter S.E. that a family friend Roy Chamniss had touched S. inappropriately while at their residence located at ___ W. James Lee Blvd. in ____, Florida.
>
> S. provided a sworn statement that on this date at approximately 1430 hours she, her sister M.E., and an adult male named Roy Chamniss were in M.'s room watching television. While all three lye [sic] on two beds placed together S. noticed that Roy had begun to stroke her side with his hands. After several minutes Roy placed his hand under the blanket covering S. and M. Roy touched S.'s upper right thigh then moved his hand down onto her genital area. He began to rub this area over her clothing against the wishes of S. This action continued several times while S. continued to advise Roy to stop. M. left the room and S. stated Roy attempted to kiss her and put his tongue in her mouth. M. returned from the bathroom and the two left to report the incident to her parents. Once they reported the incident to their parents Roy was escorted away from their home.
>
> M.E. also provided a sworn statement as to the events on today's date. She confirmed that Roy was observed rubbing S. in the upper side area. She further stated she verbally heard [sic] S. tell Roy several times to move his hand. She also physically felt Roy touching her foot when she placed it between S.'s legs. M. believed that Roy might have thought he was rubbing on S.'s private area. M. excused herself from the room and went and told her parents. M. confirmed that after her parents were made aware of the situation Roy was escorted away from the scene by their father Charles.

(Ex. O at 111).

The original information charged Petitioner with lewd or lascivious conduct as follows:

> . . . **ROY ANTHONY CHAMNISS, on or about July 16, 2008,** at and in Okaloosa County, Florida, being 18 years of age or older, to-wit: **44** years of age, did unlawfully and intentionally touch a person under sixteen (16) years of age in a lewd or lascivious manner or solicit a person under sixteen (16) years of age to commit a lewd or lascivious act, to-wit: **S.E. (DOB ___, 14** years of age, **by touching the victim's vaginal area with his hand and/or fingers,** in violation of Section 800.04(6), Florida Statutes.

(Ex. A).

At the plea hearing, defense counsel announced Petitioner wished to enter a plea of guilty to the charge in the original information, which charged lewd and lascivious conduct (Ex. H at 1). The State announced it was withdrawing the amended information, which charged lewd and lascivious molestation, and was proceeding on the original information (*id.* at 2). The court announced that the amended information was withdrawn (*id.*). The court placed Petitioner under oath and inquired whether defense counsel's announcement accurately stated Petitioner's intention, and Petitioner stated yes (*id.* at 3). Petitioner stated he read and understood the plea agreement, and he understood he was pleading guilty to the charge in the original information (*id.*). The court inquired further:

> THE COURT: . . . What that says to me is, Judge, that information says what I did. I committed this crime. Is that what you're telling me?
>
> MR. CHAMNISS: Yes, sir.
>
> . . . .
>
> THE COURT: Okay. Have you been threatened in any way or promised anything to get you to do this?
>
> MR. CHAMNISS: No, sir.
>
> THE COURT: Okay. Why—why would you do this?
>
> MR. CHAMNISS: It's in my best interest.
>
> THE COURT: You think so. I mean, you just heard me say I might give you thirty years. You couldn't do any worse if you went in front of a jury, could you?

MR. CHAMNISS:  I just want it over with.

THE COURT:  So you think this really is a better way for you then [sic] trying your case in front of a jury?

MR. CHAMNISS:  Yes, sir.

(Ex. H at 3–4, 7).  After further inquiry that confirmed Petitioner's understanding of the consequences of entering the plea and the rights he was waiving, and that Petitioner had not been threatened to enter the plea or promised anything other than what was set forth in the plea agreement, the court accepted the plea to lewd and lascivious conduct and adjudicated Petitioner guilty of that charge (*id.* at 8).

The Supreme Court held that while the barrier to collateral relief posed by the record of a plea or sentencing proceeding is not insurmountable,

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  In the instant case, Petitioner certified in the plea agreement that he read the charging document and understood the charge set forth therein, and he stated under oath at the plea hearing that he understood he was pleading guilty to the charge in the original information.  The information expressly charged him with intentionally touching a person under sixteen (16) years of age in a lewd or lascivious manner.  Petitioner's after-the-fact, conclusory allegation that defense counsel failed to advise him of the intent element of the offense is insufficient to show he did not understand the elements of the charge.

Further, the issue of whether the facts as stated in the charging document and the probable cause affidavit satisfied the elements of lewd and lascivious conduct is an issue of purely state law. The state postconviction court found that as a matter of state law, the facts included in the probable

cause affidavit provided a factual basis for Petitioner's plea to lewd and lascivious conduct.[4]  This court will not second-guess the state court on matters of state law.  *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); <u>Herring v. Sec'y, Dept. of Corr.</u>, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' ") (quoting <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997)); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983).  Therefore, this court must abide by the state court's ruling that the facts included in the probable cause affidavit provided a factual basis for Petitioner's plea to lewd and lascivious conduct.

    In light of Petitioner's certification that he read the charging document and understood the charge set forth therein, he reviewed the facts of his case with counsel and agreed that there were sufficient facts available to the State to justify his plea of guilty to the charge, he agreed that the facts set forth in the probable cause affidavit provided a factual basis for the charge, and he admitted he committed the conduct described in the information, Petitioner failed to show a reasonable probability he would not have pleaded guilty if a factual basis had been placed on the record at the plea hearing.  Therefore, Petitioner failed to show he was prejudiced by the trial court's failure to

---

[4] Lewd and lascivious conduct is defined as follows:

(a) A person who:

1.  Intentionally touches a person under 16 years of age in a lewd or lascivious manner; or

2.  Solicits a person under 16 years of age to commit a lewd or lascivious act
commits lewd or lascivious conduct.

(b) An offender 18 years of age or older who commits lewd or lascivious conduct commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 800.04(6).

Case No.: 3:11cv566/RV/EMT

place the factual basis on the record, or defense counsel's failure to object to the trial court's alleged error.

Finally, Petitioner's contention that defense counsel allowed him to plead to the wrong offense is also without merit. Petitioner asserts he agreed to plead to the charge in the original information (lewd and lascivious conduct), but he was adjudicated guilty of and sentenced to the charge in amended information (lewd and lascivious molestation). The record refutes Petitioner's claim. As previously discussed, the State withdrew the amended information at the plea hearing, prior to the Petitioner's entering his plea to the charge of lewd and lascivious conduct as charged in the original information (*see* Ex. H at 2). The court announced that the amended information was deemed withdrawn (*id.*). Petitioner then entered his plea to the charge in the original information, and the court accepted his plea and adjudicated him guilty of that charge (*id.*).[5] Petitioner therefore failed to demonstrate defense counsel allowed him to plead to the wrong offense (that is, the offense charged in the amended information).

Petitioner failed to demonstrate that the state court's adjudication of his claims was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Grounds One, Two, and Three.

>    B.    Ground Four: "Whether trial counsel Public Defender Scott Miller rendered
>    ineffective assistance of counsel by failing to conduct adequate investigations thereby
>    causing the plea to be involuntary against rights secured by the Untied [sic] States
>    Constitution."

Petitioner contends his plea was unknowing and involuntary due to his mental instability and the effects of psychotropic medications he was taking at the time of his plea, specifically, Lithium and Vistaril (doc. 1 at 4; doc. 2 at 17–21). Petitioner asserts he and his wife informed defense counsel of his "current and previous diagnosis" and that he was mentally unstable (*id.*). He states Dr. Larson evaluated him and confirmed this (*id.*). Petitioner states he also advised counsel he

---

[5] The Judgment states Petitioner pleaded guilty to and was adjudicated guilty of "Lewd or Lascivious Conduct—Victim 12 YOA up to 16 YOA Offender 18 YOA or Older" (Ex. J). Although the Judgment contains a clerical error with regard to the offense statute number for the crime (it cited the statute number for lewd or lascivious molestation, Fla. Stat. § 800.04(5)(c)2), instead of lewd or lascivious conduct, Fla. Stat. § 800.04(6)(b)), it correctly stated the crime of which Petitioner was convicted and for which he was sentenced.

"[did] not really understand[] his plea hearing" due to prescribed psychotropic medications he was taking (*id.*).  He contends defense counsel should have advised the trial court at the plea hearing that Petitioner was under the influence of prescribed medications (*id.*).  Petitioner additionally argues defense counsel should have investigated an insanity defense, based upon Dr. Larson's evaluation (*id.*).

Respondent contends Petitioner failed to demonstrate the state court's adjudication of this claim was contrary to or an unreasonable application of Strickland (doc. 22 at 19–21).

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Grounds Four and Eight in his Rule 3.850 motion (Ex. O at 12–13, 20–21, 76–78, 86–87).  The state circuit court adjudicated the claim as follows:

> . . . Defendant argues that his trial counsel performed ineffectively by failing to investigate his claims of mental deficiency.

> Defendant argues that although his attorney was notified of his psychotropic drug use and his inability to understand the proceedings on February 19, 2009, and April 13, 2009, his attorney failed to seek a competency evaluation before proceeding with the plea.

> In its response, the State argues that the Defendant indicates that he understood what was happening during the plea colloquy and that he was not under the affects [sic] of any medications or drugs that would inhibit his ability to understand the proceedings.  The State also attaches documentary evidence in the form of a psychological evaluation performed by Dr. James D. Larsen [sic], Ph.D., and addressed to Defendant's attorney, indicating that a full psychological evaluation had been performed and that the Defendant was not insane at the time of the alleged incidents and that he was in fact competent to stand trial.[FN 1:  reference to attachments]

> Thus, Defendant's claim that his attorney should have investigated the alleged mental deficiencies is unfounded—his attorney *did* in fact investigate this claim and found that it did not have merit.  This ground is **DENIED.**

(Ex. O at 149–50).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion.

In support of his claim that he was under the influence of psychotropic medications at the time of the plea (February 19, 2009), Petitioner submitted a statement from his insurance provider showing he was prescribed Primidone on November 6, 2008 and December 16, 2008, and Abilify on January 12, 2009 (Ex. O at 63). The record reflects Petitioner was on pre-trial release during that time and also at the time he signed the plea agreement and entered his plea (Ex. C).[6] At the request of defense counsel, Petitioner was evaluated by Dr. James Larson, a licensed psychologist, on August 5, 2009, for a determination of his competency to proceed (Ex. O at 134–36). Dr. Larson determined Petitioner was oriented to time and place, and his cognition and judgment were grossly intact (*id.*). He noted Petitioner received disability benefits due to his mental disorder (*id.*). Dr. Larson determined Petitioner suffered a "serious mental disorder," specifically, severe depression and anxiety (*id.*). With regard to competency, Dr. Larson determined Petitioner had the present ability to consult with counsel with a reasonable degree of rational understanding, had a rational and factual understanding of the proceedings against him, had the capacity to appreciate the charge against him and the range and nature of possible penalties, had the capacity to understand the nature of the legal process, and had the capacity to disclose to counsel pertinent facts surrounding the offense (*id.*).

On November 3, 2008, Petitioner was assessed by Oliver Maigan, MS, from the Bridgeway Center, upon referral from the Florida Department of Children and Family Services (Ex. O at 144–47). Petitioner reported he was a patient of Bridgeway ten (10) years prior and was prescribed Elavil, Lithium, and Vistaril at that time (*id.* at 145). He reported that the medications made him "comatose" (*id.*). Petitioner's scores on the Beck Anxiety Inventory and the Beck Depression Inventory indicated severe depression and severe anxiety (*id.* at 146). Mr. Maigan recommended Petitioner receive a psychiatric evaluation, and made an appointment for January 12, 2009 (*id.* at 144, 146).

On January 12, 2009, just one month prior to Petitioner's entry of his guilty plea, he was evaluated by Kay Whitten, a psychiatric nurse practitioner at the Bridgeway Center (Ex. O at

---

[6] The state court record reflects Petitioner was arrested on July 17, 2008, and detained until late September or early October of 2008, when he was released on bond (*see* Ex C).

139–43).  Again, Petitioner reported he was a patient at Bridgeway ten (10) years prior and was prescribed Elavil and sometimes Lithium and occasionally Vistaril "for his shakes as well as mood instability" (*id.*).  Petitioner reported he had been off those medications for ten (10) years, but was taking a medication for "the shakes" prescribed by Dr. Pann (Primidone) (*id.* at 142, 148).  Ms. Whitten noted Petitioner was alert and oriented, his behavior was appropriate and his speech was relevant and goal directed, but his mood was anxious (*id.* at 142).  She prescribed Abilify for mood stabilization and to help him sleep (*id.* at 143).

Petitioner failed to show defense counsel performed deficiently by failing to advise the court that Petitioner was under the influence of prescribed medications at the time of the plea.  It was apparent on the face of the written plea agreement that Petitioner was taking Abilify and Primidone when he signed the plea agreement and entered his plea to the trial court (Ex. G at 1).  Further, although Petitioner suggests he was taking Lithium and Vistaril when he entered his plea (*see* doc. 2 at 20), none of his medical records support this assertion; in fact, his medical records indicate he was prescribed Lithium and Vistaril <u>ten years prior</u> to the plea proceedings.  Additionally, none of Petitioner's records suggest he was incompetent or unable to understand or appreciate the nature of the charges, the nature and consequences of the plea proceedings, the rights he was waiving, or the range of possible penalties he faced when he signed the plea agreement and entered his plea. Moreover, there is no indication in the record of the plea proceeding that Petitioner was unable to understand what he was doing (*see* Ex. G).  The transcript of the hearing shows that Petitioner responded appropriately to questions posed by the trial court and exhibited no indication that he did not understand the proceedings (*id.*).  Indeed, Petitioner stated he understood he was pleading guilty to the charge in the original information, he understood there was no agreement as to his sentence, he understood he was giving up the right to a trial by jury where the State would have to convince the jury of his guilt beyond a reasonable doubt, he understood he would be adjudicated guilty of the charge, he understood the court could impose a thirty-year sentence even if the State requested a lesser sentence, and he understood he was giving up his right to appeal (*id.* at 3–8).  Based upon this

record, Petitioner failed to show that defense counsel had a reasonable basis to further investigate

Petitioner's competency or his ability to enter a knowing and intelligent plea.[7]

Petitioner also failed to show that defense counsel had a reasonable basis to investigate an

insanity defense.  In support of his claim that he was insane at the time of the offense, Petitioner

submitted insurance records showing he was prescribed the following drugs on the following dates:

| | |
|---|---|
| 05/14/2008 | Oxycodone with Acetaminophen (5mg/325mg), 7 tablets (pain reliever) |
| 05/14/2008 | Ketorolac (10mg), 20 tablets (nonsteroidal antiinflammatory drug) |
| 05/14/2008 | Methylprednisolone, 21 tablets (antiinflammatory drug) |
| 05/27/2008 | Meloxicam (15mg), 30 tablets (nonsteroidal antiinflammatory drug) |
| 05/27/2008 | Cyclobenzaprine (10mg), 30 tablets (treatment for muscle spasms) |

(Ex. O at 63).  He committed the offense on July 16, 2008 (Ex. A).

The record demonstrates that Dr. Larson, who evaluated Petitioner on August 5, 2008, for

competency, also evaluated him to determine his mental status at the time of the alleged offense, at

the request of defense counsel (Ex. O at 133–36).  Dr. Larson determined Petitioner did not meet

the criteria for insanity (*id.* at 133).  In light of this determination, Petitioner failed to show that

defense counsel had a reasonable basis to further investigate an insanity defense.

Based upon the foregoing, Petitioner failed to show that the state court's adjudication of this

claim was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to

habeas relief on Ground Four.

C.     Ground Five:  "Whether the information fails to allege all elements in making a
charge and/or the indictment or information is correct [sic], so vague, indistinct, and
indefinite as to mislead Appellant and embarrass him in the preparation of a said defense or
expose the Appellant after conviction to substantial danger of a new prosecution of the same
offense, representing fundamental error, whereby Appellant is denied due process against
rights secured by the 14th Amendment of the United States Constitution."

---

[7] At one point during the plea colloquy, Petitioner equivocated on his desire to plead guilty.  After the
prosecutor announced Petitioner qualified for a habitual felony offender ("HFO") sentence of thirty (30) years, but the
State intended to seek only a fifteen-year sentence, the court advised Petitioner that he could be sentenced to thirty (30)
years even if the State requested a lesser sentence, since the plea agreement did not provide for an agreed-upon sentence
(Ex. G at 5).  The court asked Petitioner whether that information changed his willingness to enter the plea, and Petitioner
responded, "Now it does." (*id.* at 5–6).  The prosecutor reiterated that the State did not intend to request an HFO
sentence, but the trial court emphasized that regardless of the State's intent, Petitioner must understand that the court
could lawfully impose a thirty-year HFO sentence (*id.* at 6).  The court then inquired of Petitioner, "So you're willing
to go forward with this plea, or not?" (*id.* at 6–7).  Petitioner responded "Yes, sir."  The court again asked, "You are
willing to go forward with the plea?," and Petitioner reaffirmed, "Yes, sir." (*id.* at 7).

Petitioner contends the information was defective, because it failed to properly allege all essential elements of the crime of lewd or lascivious conduct and failed to allege facts to support the charge (doc. 1 at 4; doc. 2 at 22–25). He also repeats his argument that even though he pleaded guilty to lewd and lascivious conduct as charged in the original information, he was sentenced to lewd and lascivious molestation as charged in the amended information (*id.* at 23, 25).

Respondent contends Petitioner failed to fairly present a federal claim to the state courts (doc. 22 at 21). Respondent asserts Petitioner raised a similar, though not identical claim, as Ground Five in his Rule 3.850 motion, but he never claimed any violation of the Constitution; rather, he premised his claim on the Florida Rules of Criminal Procedure and Florida cases setting forth the requirements for proper charging documents (*id.*). Respondent additionally contends the state postconviction court correctly determined the charging document was not defective, because it tracked the statute, which sets forth the essential elements of the crime (*id.* at 21–23). Therefore, the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

1.     Clearly Established Federal Law

It is generally a denial of due process to convict a defendant of an uncharged crime. *See generally* <u>Stirone v. United States</u>, 361 U.S. 212, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960); <u>Cole v. Arkansas</u>, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."); <u>Markham v. United States</u>, 160 U.S. 319, 16 S. Ct. 288, 40 L. Ed. 441 (1895); *see also* <u>Perley v. State</u>, 947 So. 2d 672, 674 (Fla. 4th DCA 2007); <u>Rogers v. State</u>, 963 So. 2d 328, 332 (Fla. 2d DCA 2007).

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Five in his Rule 3.850 motion, arguing a violation of the Fourteenth Amendment (Ex. O at 14–15, 79–81). The state circuit court adjudicated the claim as follows:

> Fifth, Defendant argues that the information under which he was charged was defective for failure to adequately allege all the elements of the crime for which he

> was charged.  As the attached original information shows, Defendant's argument is without legal merit and should be summarily **DENIED**.[FN 12:  reference to attached Information]

(Ex. O at 95).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion.

Under Florida law, "[a]n information must allege each of the essential elements of a crime to be valid."  <u>State v. Dye</u>, 346 So.2d 538, 541 (Fla. 1977).  "A criminal information is fundamentally defective 'only where it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy.'"  <u>Perley</u>, 947 So. 2d at 674 (citations omitted).

Rule 3.140 of the Florida Rules of Criminal Procedure provides, in relevant part:

> **(b)   Nature of Indictment or Information.**  The indictment or information on which the defendant is to be tried shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.
> . . . .
> **(d) The Charge.**
>
> **(1) Allegation of Facts; Citation of Law Violated.**  Each count of an indictment or information on which the defendant is to be tried shall allege the essential facts constituting the offense charged.  In addition, each count shall recite the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.  Error in or omission of the citation shall not be ground for dismissing the count or for a reversal of a conviction based thereon if the error or omission did not mislead the defendant to the defendant's prejudice.
> . . . .
> **(o) Defects and Variances.**  No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Fla. R. Crim. P. 3.140(b), (d), (o).

Lewd and lascivious conduct, the charge to which Petitioner pled guilty, is defined as follows:

(a) A person who:

1. Intentionally touches a person under 16 years of age in a lewd or lascivious manner; or

2. Solicits a person under 16 years of age to commit a lewd or lascivious act commits lewd or lascivious conduct.

(b) An offender 18 years of age or older who commits lewd or lascivious conduct commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.".

Fla. Stat. § 800.04(6).

As previously discussed, the original information charged that Petitioner:

. . . **on or about July 16, 2008,** at and in Okaloosa County, Florida, being 18 years of age or older, to-wit:  **44** years of age, did unlawfully and intentionally touch a person under sixteen (16) years of age in a lewd or lascivious manner or solicit a person under sixteen (16) years of age to commit a lewd or lascivious act, to-wit: **S.E. (DOB ___, 14** years of age, **by touching the victim's vaginal area with his hand and/or fingers,** in violation of Section 800-04(6), Florida Statutes . . . .

(Ex. A).

The state court determined that the information adequately alleged the elements of the crime. This court must abide by the state court's interpretation of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Therefore, this court is bound by the state court's determination that the information was not defective in this regard.  Additionally, the information was not so vague, indistinct, or indefinite as to mislead Petitioner or impede the preparation of his defense.  The information clearly notified Petitioner he was being charged with lewd and lascivious conduct on the victim S.E., based upon his touching her vaginal area with his hand and/or fingers on July 16, 2008, and that the victim was under the age of sixteen.  Therefore, Petitioner failed to establish a due process violation with respect to the charging document.

D.    Ground Six:  "Whether trial counsel Public Defender Scott Miller rendered ineffective assistance of counsel by misadvising as to the length of sentence Appellant would

receive upon entering an open guilty plea to the court; this done against rights secured by the United States Constitution."

Petitioner contends defense counsel advised him that he scored 24.6 months on the Criminal Punishment Code scoresheet, and he could guarantee Petitioner a 24.6-month sentence, because he and the judge were friends, and "Judge Stone will look favorably on the fact that you are being honest, wanting to just get it over with . . ." (doc. 1 at 5; doc. 2 at 26–28).[8] Petitioner acknowledges he was informed by the court during the plea colloquy that he could face a sentence of up to thirty (30) years if he was sentenced as an HFO, or a sentence of up to fifteen (15) years if a non-HFO sentence was imposed, but he states he relied upon counsel's guarantee of a 26.4-month sentence (*id.*).

Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (doc. 22 at 24).

### 1.     Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

### 2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Six in his Rule 3.850 motion (Ex. O at 16–17, 82–83). The state circuit court adjudicated the claim as follows:

> Sixth, Defendant argues that his trial counsel performed ineffectively by misadvising him that the judge would not give him the maximum sentence if he entered a guilty plea without an agreed sentence.  As the attached transcript from the plea colloquy shows, the trial judge took special care in advising the [D]efendant that there was *no* agreed sentence and that the judge, after listening to the sentencing hearing, could choose to sentence the Defendant up to the statutory maximum for the crime.  Additionally, the judge indicated that because there was a notice of intent to seek HFO status filed in the case, if the Court determined an HFO sentence of thirty years was appropriate the Defendant could actually be sentenced to thirty years.  Thus, even if his attorney had informed him that the judge wouldn't give someone who entered a guilty plea the statutory maximum sentence, the Court ensured that the Defendant was made aware of that potential outcome before accepting the Defendant's plea.  This ground is summarily **DENIED**.

---

[8] Petitioner misnumbered the pages of his supporting memorandum.  The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

(Ex. O at 95–96). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion.

The record demonstrates that prior to entering his plea, Petitioner signed the written plea agreement certifying his counsel had made no promises to induce him to enter the plea, nor was he relying on any representations as to actual time he would serve in entering the plea (Ex. G). Further, the plea agreement clearly stated that the statutory maximum sentence for the offense was fifteen (15) years, and there was no agreement with the State as to his actual sentence (*id.*). Additionally, the plea colloquy supports the state court's finding that the court advised Petitioner he could be sentenced to fifteen (15) years if a non-HFO sentence was imposed and thirty (30) years if the court imposed an HFO sentence (Ex. H at 4–7). Petitioner stated he wished to enter a guilty plea despite this sentence exposure (*id.* at 6–7). Further, when the court asked Petitioner if he had been promised anything to encourage him to enter a guilty plea, Petitioner responded, "No, sir." (*id.* at 7).

Petitioner's sworn statement during the plea colloquy that he was not promised anything in relation to the plea, undermines his present allegation that counsel guaranteed him a 26.4-month sentence if he pleaded guilty. Further, the plea colloquy demonstrates Petitioner understood he could receive a 30-year sentence if he entered a guilty plea. In light of this record, Petitioner failed to establish that the state court's adjudication of this claim was unreasonable under <u>Strickland</u>. He therefore is not entitled to relief on Ground Six.

 E. <u>Ground Seven: "Whether trial counsel Public Defender Scott Miller rendered ineffective assistance of counsel by misadvising as to photo being placed upon the internet; this done against rights secured by the Untied [sic] States Constitution."</u>

Petitioner asserts defense counsel guaranteed him that if he entered a guilty plea, his photograph and conviction would not become known to the public through the internet (doc. 1 at 5; doc. 2 at 29–31). Petitioner states he entered his guilty plea in reliance on this guarantee, and he would not have entered a plea had he known his photograph would be published on the internet as a sexual predator (*id.*).

Respondent contends the state court's adjudication of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law (doc. 22 at 24–25).

1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Seven in his Rule 3.850 motion (Ex. O at 18–19,

84–85).  The state circuit court adjudicated the claim as follows:

> Seventh, Defendant argues that his trial counsel performed ineffectively by misadvising him that his photo would not appear on the internet as a sexual predator. Attorney's [sic] are not responsible for misadvise [sic] given concerning matters collateral to a plea.[FN 13]  This ground is summarily **DENIED**.

>> [FN 13:  <u>State v. Partlow</u>, 840 So. 2d 1040, 1043 (Fla. 2003) ("The registration requirement has absolutely no effect on the 'range of the defendant's punishment' for the crime to which Partlow entered a plea.  Because the requirement to register is not punishment at all, and therefore cannot affect the range of the defendant's punishment, it is merely a collateral consequence of the plea.")]

(Ex. O at 96).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed

the lower court's decision without written opinion.

Initially, Petitioner's after-the-fact allegation that counsel guaranteed him that his photograph

would not be published as a sexual predator if he entered a guilty plea as inducement to Petitioner's

entering a guilty plea is refuted by the record.  As previously discussed, Petitioner certified in the

written plea agreement that defense counsel had made no promises to induce him to enter the plea

(Ex. G).  Further, he stated under oath to the court during the plea colloquy that he had not been

promised anything to encourage him to enter a guilty plea (Ex. H).  Therefore, he failed to show that

counsel's alleged "guarantee" that he would not be published as a sexual predator impacted his

decision to plead guilty.[9]

---

[9] Moreover, Petitioner had already been classified a sexual offender in a prior criminal case.  The court may take judicial notice of readily verified facts, such as facts included on the docket of Okaloosa County Circuit Court Case No. 1996-CF-1699.  *See* Fed. R. Evid. 201; <u>United States v. Berrojo</u>, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* <u>Mangiafico. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); <u>In re Salem</u>, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); <u>Dawson v. Mahoney</u>, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); <u>United States v. Mercado</u>, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket

To the extent Petitioner contends counsel was ineffective for failing to advise him of the sexual predator consequences, his claim is without merit. Under federal and state law, a defendant need only be advised of the direct consequences of his guilty plea; advising a defendant of the collateral consequences of a guilty plea is not constitutionally required. *See* United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) (holding that counsel is not constitutionally ineffective for failing to inform a defendant of the "collateral consequences" of a guilty plea); Pickard v. Thompson, 170 F. App'x 86, 87 (11th Cir. 2006) (same); State v. Partlow, 840 So. 2d 1040, 1043 (Fla. 2003) (same). The requirements of The Florida Sexual Predators Act are remedial, not punitive; therefore, sexual predator designation is a collateral, rather than a direct, consequence of a guilty plea. *See* Partlow, 840 So. 2d at 1043 (sexual offender registration requirement is a collateral consequence of a plea to a sexual offense because the registration requirement has absolutely no effect on the range of the defendant's punishment for the crime); Delarosa v. State, 913 So. 2d 76 (Fla. 3d DCA 2005) (designation as sexual offender or sexual predator was collateral, not direct, consequence of guilty plea about which defendant did not have to be advised); Gunn v. State, 841 So. 2d 629, 631 (Fla. 2d DCA 2003) (confirming that designation as either sexual offender or predator is collateral consequence about which defendant does not have to be advised at time of plea); Donovan v. State, 773 So. 2d 1264, 1265 (Fla. 5th DCA 2000); LaMonica v. State, 732 So. 2d 1175 (Fla. 4th DCA 1999); Collie v. State, 710 So. 2d 1000 (Fla. 2d DCA 1998) (sexual predator designation was collateral consequence of guilty plea). Because the requirements attendant to Florida's sexual predator designation are collateral consequences of a guilty plea, even if defense counsel failed to advise Petitioner he was subject to the requirements, such failure did not render Petitioner's plea unknowing or involuntary. *See, e.g.*, Honrine v. McNeil, No. 5:07cv227/MCR/EMT, 2009 961122, at \*15 (N.D. Fla. Apr. 6, 2009) (unpublished); Griggs v.

---

entries). The docket of Case No. 1996-CF-1699, states Petitioner pleaded nolo contendere to a charge of attempted lewd and lascivious conduct in 1997, and was placed on probation for four (4) years with adjudication withheld (*see* Ex. I at 3). *See* www.clerkofcourts.cc/ (search "Court Records" for Case Number 1996 CF 001699). Petitioner subsequently violated his probation and was placed on community control for one year (which was later converted to probation), and after the violation, the court entered an order classifying him a sexual offender. *Id.* This classification subjected him to publication on the Florida Department of Law Enforcement Florida Sexual Offenders and Predators website, www.offender.fdle.state.fl.us/. The fact that he was already subject to publication as a sexual offender undermines his allegation that publication was a "deal breaker" for entry of a guilty plea in the instant case.

McNeil, No. 5:07cv211/RH/MD, 2009 WL 347721, at *1, 9 (N.D. Fla. Feb. 9, 2009) (unpublished); Jefferson v. Crosby, No. 4:04cv416/MMP/EMT, 2008 WL 681018, at *1, 20 (N.D. Fla. Mar. 6, 2008) (unpublished).

Petitioner failed to establish the state court's adjudication of his claim was contrary to or an unreasonable application of Strickland.

> F.   Ground Eight: "Whether trial counsel Public Defender Scott Miller rendered ineffective assistance of counsel by failing to conduct pretrial depositions of numerous State witnesses causing the plea to be involuntary against rights secured by the Untied [sic] States Constitution."

Petitioner asserts defense counsel was ineffective for failing to depose the victim, the victim's sister, and the victim's mother (doc. 1 at 5; doc. 2 at 32–34). He alleges,

> All of the testimony of the enunciated [sic] witnesses contained "factual" testimony concerning the victim's credibility concerning false and previous accusations where the "natural father" is concerned. Because the very victim's credibility would be called into question, a jury of reason would not have found Appellant guilty of the alleged molestation. Where the "natural father" was concerned, record evidence supports the victim's allegations to be false, and would show evidence of a pattern to falsely accuse an individual of a non-existent crime.

(doc. 2 at 34). Petitioner contends had he been aware of this "exculpatory evidence," he never would have pleaded guilty and instead would have insisted on proceeding to trial (id. at 33).

Respondent contends Petitioner did not fairly present this claim to the state court, because he did not allege in his Rule 3.850 motion that the victim previously made false sexual abuse allegations against her father; rather, Petitioner alleged only that the victim previously made sexual abuse allegations against her father (doc. 22 at 24–25). Respondent asserts Petitioner argued in his postconviction appellate brief that the witnesses would have testified that the victim's alleged accusations against her father were false; however, this did not constitute proper presentation of the issue, because it was not raised in the lower court (id.). Respondent additionally contends even if the claim was deemed exhausted, the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (id. at 26–27).

> 1.   Clearly Established Federal Law

The Strickland standard, set forth supra, governs this claim.

> 2.   Federal Review of State Court Decision

In Ground Nine of Petitioner's Rule 3.850 motion, he argued defense counsel was ineffective for failing to depose the victim and her mother and sister (Ex. O at 22–23, 88–89). He alleged counsel would have discovered that the witnesses would have testified that the victim had previously accused her father of sexual abuse (*id.*). Petitioner did <u>not</u>, however, allege counsel would have discovered that the victim previously made <u>false</u> allegations of sexual abuse against her father (*id.*). The state circuit court denied the claim as follows:

> Ninth, Defendant argues that his trial counsel performed ineffectively by failing to conduct discovery depositions. Defendant has failed to describe any witness or alleged testimony from such witnesses that was unavailable or unknown to him at the time he entered his plea. Furthermore, none of the potential testimony described in Defendant's motion is exculpatory in nature. Rather, all of the proffered testimony consists of allegations of additional sexual abuse committed on the various potential witnesses in the case by other perpetrators. It is certainly not a defense to the Defendant's crimes that the victim and other witnesses were also molested by another individual. Because the witnesses and the alleged content of their testimony was known to the Defendant at the time he entered his plea of guilty, and because none of the proffered testimony is exculpatory in any way, this ground in summarily **DENIED**.

(Ex. O at 96–97). Petitioner appealed the decision to the First DCA, arguing for the first time that the witnesses would have testified the victim previously made false allegations of molestation against her father (Ex. P at 35). The First DCA affirmed the lower court's decision without written opinion (Ex. Q).

Professionally competent assistance includes a duty to conduct a reasonable investigation. <u>Strickland</u>, 466 U.S. at 690–91. The Court has emphasized that only when counsel's choices are made after a "thorough investigation of law and facts relevant to plausible options" are those choices "virtually unchallengeable." *Id.* at 690. When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Thus, at a minimum, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." *Id.* at 691. This means that when the court assesses the attorney's decision not to investigate, the court "must consider . . .

whether the known evidence would lead a reasonable attorney to investigate further." <u>Price v. Allen</u>, 679 F.3d 1315, 1323 (11th Cir. 2012) (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 527, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." <u>Richter</u>, — U.S. — , 131 S.Ct. at 779.

Initially, Petitioner's allegations regarding the substance of the victim's deposition testimony and the testimony of her mother and sister are purely speculative. When a habeas claim is based upon the testimony of a putative witness, the petitioner must generally present evidence in "the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)); *see also* <u>United States v. Schaflander</u>, 743 F.2d 714, 721 (9th Cir. 1984) (to succeed on claim of ineffective assistance of counsel based upon counsel's failure to investigate or interview potential witnesses, petitioner must make sufficient factual showing substantiating testimony of proposed witnesses, for example, affidavits or sworn statements). In the instant case, Petitioner offered nothing, in the form of affidavits or otherwise, to show that the victim, her mother, and her sister actually would have testified that the victim previously falsely accused her father of molesting her. His allegations are thus insufficient to show that defense counsel performed ineffectively by failing to depose these witnesses.[10] This is especially true in light of the fact that Petitioner admitted to the trial court during the plea colloquy that he committed the act alleged in the information (*see* Ex. H at 3–4). Therefore, he failed to demonstrate that counsel's failure to depose the victim and her family members constituted ineffective assistance. Accordingly, he is not entitled to federal habeas relief on this claim.

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing

---

[10] The state court docket reflects defense counsel scheduled depositions in October of 2008, and subpoenas for depositions issued; however, there is no indication of the identity of the witnesses or whether those depositions actually took place (*see* Exs. C, D)

required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 11<u>th</u> day of December 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No.: 3:11cv566/RV/EMT